IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 96-081L |
| | ) | |
| RICHARD PAIVA, JR. | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO RECUSE

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, and hereby responds to the defendant's Motion to Recuse

Defendant, Richard Paiva, Jr., has filed this motion in order to have every judge and magistrate in this District recused from consideration of his supervised release violations. He contends that because one or more U.S. Deputy Marshals will be witnesses against him and that one of the functions of the U. S. Marshals Service (USMS) is to provide protection and security to the Court, that 28 U.S.C. § 455(a) requires recusal. He is wrong.

## FACTS

On May 2, 1997, defendant was sentenced to 33 months to be followed by 5 years of supervised release after having pleaded guilty to violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

On April 14, 2004, defendant was found to have violated the terms of his supervised release by, among other things, having committed new criminal conduct. He was sentenced to 6 months imprisonment to be followed by 5 years of supervised release. That period of supervised release began on September 1, 2004. On July 22, 2005 and August 3, 2005, defendant's Probation Officer, David Borelli, instructed defendant not to have any further contact with Ms. Dore that was not made through the Probation Office.

On August 12, 2005 Ms. Jennifer Dore, the mother of defendant's children, contacted Officer Borelli. She told Officer Borelli that defendant had made threatening phone calls to her. At the suggestion of Officer Borelli, Ms. Dore purchased a digital recorder and later that day, recorded 8 more telephone calls made to her by defendant. Ms. Dore turned over the recorder to Officer Borelli. Officer Borelli reviewed those calls and determined that in them defendant made threats to kill Ms. Dore.

On August 12, 2005, Officer Borelli notified the Court about the alleged violations and requested that a warrant be issued for defendant's arrest. The Court issued the warrant the same day. Defendant called Officer Borelli on August 12th and said he was aware of the warrant and would turn himself in after he took care of a few matters. Defendant reiterated this intent in several more calls to Officer Borelli. Officer Borelli encouraged defendant to turn himself in as early as possible. Later that evening, defendant called Officer Borelli again. Officer Borelli discussed the nature of the violations with defendant and directed him to turn himself in. Defendant refused to do so and stated he was not going back to jail. Defendant made further threats against Ms. Dore.

Officer Borelli made several more attempts to call defendant in order to urge him to surrender. Officer Borelli did not have contact with defendant until August 15, 2005, when defendant called him. Although he discussed the possibility of turning himself in, defendant ultimately rejected that course.

On August 16, 2005 Deputy U.S. Marshals saw defendant run into a residence in Narragansett. Deputy Marshals McDonald, Wattik and Charette conducted a search of the first floor of the residence. When defendant was not found, the search was extended to the basement. Deputy Charette found defendant and ordered him to show his hands. Instead of complying, defendant shoved Deputy Charette into the wall and struggled with him. Ignoring commands from the deputies to stop struggling, defendant continued to resist. He was finally subdued by several deputies, placed in handcuffs, placed under arrest, and taken to the courthouse for presentation on the violation.

Based upon those events, defendant was charged with an additional violation based on a violation of law, *i.e.*, the assault upon Deputy Charette.

At an initial hearing on this matter on August 31, 2005, the Court indicated that as several of the witnesses in the case might be Deputy Marshals, if defendant was going to raise recusal as an issue, the Court would prefer it was raised sooner rather than later. At a hearing on September 1, 2005, counsel for the defendant and defendant himself indicated a desire to file a motion seeking recusal. This motion followed.

## ARGUMENT

Defendant contends that all of the judges of this district must recuse themselves because,

as a part of their professional duties, Deputy Marshals are responsible for the security of court personnel, and one or more deputies will likely testify as percipient witnesses in this matter. Thus the Court will be called upon to make credibility determinations of some of the individuals it relies upon for protection. Defendant contends the 28 U.S.C. § 455(a) requires recusal in such circumstances. He is wrong.

28 U.S.C. § 455(a) provides:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The First Circuit has held that the

> question is: whether the charge of lack of impartiality is ground on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

Cigna Fire Underwriters Company, et al. v. MacDonald & Johnson, Inc., 86 F.3d 1260, 1270-71 (1st Cir. 1996) (quoting United States v. Arach, 946 F.2d 129, 140 (1st Cir. 1991)) (remaining citations omitted); see also United States v. Voccola, 99 F.3d 37, 42 (1st Cir. 1996). That Court went on to note that Justice Bryer, when on the Court of Appeals, stated that

> [w]hen considering disqualification, the district court is *not* to use the standard of Caesar's wife, the standard of mere suspicion . . . that is because the disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

Id. at 1271 (emphasis in original) (quoting In Re United States, 666 F.2d 690, 970 (1st Cir. 1981)). Lastly, "[n]o permissible reading of subsection 455(a) would suggest that Congress intended to allow a litigant to compel disqualification simply on unfounded innuendo concerning

the *possible* partiality of the presiding judge." Id. (emphasis in original) (quoting El Fenix de Puerto Rico v. The M/V Johan, 36 F.3d 136, 140 (1st Cir. 1994)).

The entire crux of defendant's argument is that because there is a professional relationship between the organization for which some of the witnesses work, *i.e.*, United States Marshals Service (USMS), and the court; and that the presiding judge will have to make credibility determinations, there is a sufficient appearance of partiality such that § 455(a) is triggered. Neither the law nor logic supports this conclusion. Further, defendant's proposed "fix" of having this case assigned to a judge from outside of this district is no "fix" at all.

Defendant's assertion that recusal and assignment of this case to a judge from New Hampshire would alleviate the problem demonstrates a lack of understanding on his part of how the system works. Assuming a judge from any other district is assigned to handle a case in this district, that judge may choose to conduct all hearings on the matter in this district. For whatever time that judge is in this district his or her security will be provided by the Deputy Marshals of the Providence USMS. Thus the same problem as to recusal arises. Further, even if nonjury hearings are conducted in that judge's home district, if a matter requires presentation to a jury, that will be conducted here with a jury drawn from this district - once again resulting in the presiding judge being provided protection by the employer of one or more of the witnesses to appear. That will be a consideration in this case as the government does intend to pursue an independent indictment against this defendant for the assault on a federal law enforcement officer. Thus the Court must consider how its decision in the instant case will affect not only other unrelated cases in the future, but the companion case involving this defendant on the related indictment.

"It is a judge's job to make credibility determinations, and when he does so, he does not

thereby become subject, legitimately, to charges of bias." United States v. Cooper, 821 F.2d 833, 838 (1st Cir. 1987). Under defendant's argument testimony in any criminal proceeding requiring the presiding judge to make credibility determinations by any agent or officer employed by any law enforcement organization responsible for the judicial officers' safety, would thereby trigger the application of § 455(a) and require recusal. A simple analysis of what happens in the typical threat case reveals the flaw in this argument. If a threat against a judicial officer is received, the USMS provides necessary security along with the FBI, which is also charged with investigating the threat. It is likely that the Rhode Island State Police (RISP) and the local police from the judicial officer's city or town of residence will also be involved in either the investigation or protection of the threat victim. Applying defendant's reasoning, because all of the agencies are involved in providing security, no judge in this district may preside over any criminal case in which any officer or agent of those law enforcement organizations testifies. This is an absurd result and yet it is the logical result of defendant's argument. Yet the law very clearly provides that judges are not required to recuse themselves in such situations.

> Generally, familiarity - or even a judge's friendship with prospective witnesses - does not require a judge's recusal under § 455(a). This is the general rule because it is recognized that the public understands that judges are usually longstanding members of the community in which they serve and although they will inevitably encounter witnesses with who they, or people very close to them, have had positive or negative experiences, judges can and will ordinarily ignore those experiences and decide the matters before them impartially.

United States v. Salemme, 164 F.Supp.2d 86, 105 (D. Mass 1998) see In Re United States, 666 F.2d at 696-97. In Salemme Judge Wolfe was asked to recuse himself because one current FBI agent and one former FBI agent with whom he had prior dealings when he was a Deputy United States Attorney were to testify. In that case the government sought the recusal as it claimed that

the judge's prior dealings with those witnesses might result in an unfavorable view of their credibility when they testified in the case against Salemme. Judge Wolfe did not find there was a basis for his recusal under § 455(a) as his prior contacts with the two witnesses were "limited and included ordinary, professional interactions which no one seemed to remember." Id. Here, defendant is basing his ground for recusal on interactions that might take place in the future. He does not claim that any of the potential witnesses have provided any of the judges in this district with specific or special protection services in the past. Nor does he claim that any of these potential witnesses have had any contact with any of the judges which does not fall within the ambit of ordinary, professional interactions.

Because it is the job of a presiding judge to make credibility determinations, once a judge has found a particular law enforcement witness credible in one context, *e.g.*, a suppression hearing, does that then mean the judge must recuse himself when called upon to once again decide that same witness's credibility either in another hearing in the same case or in a subsequent case? Of course not. "A judge is presumed not to confuse the evidence in one case with that in another." Cooper, 821 F.2d at 839. That the judge makes a credibility decision based *upon the evidence before him* is not a basis for claiming extrajudicial or personal bias. Id. (citing Blizard v. Freche, 601 F.2d 1217, 1220-1222 (1st Cir. 1979)). Further, a judge is not required to recuse himself from consideration of a case involving a defendant who has come before him previously.

> The judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case.

Voccola, 99 F.3d at 42. "Judges are not disqualified from trying defendants of whom, through prior judicial proceedings, they have acquired a low view." Id. (quoting In Re Cooper, 821 F.2d

833, 844 (1st Cir. 1987)). If a judge may hear a successive action involving a defendant about whom they have acquired a low opinion without raising an apparent bias in the mind of a reasonable man, so too may a presiding judge take testimony and decide the credibility of Deputy Marshals or other law enforcement officers and agents who are generally tasked with providing the court with security.

Despite defendant's claim to the contrary, the issue in United States v. Faul, 748 F.2d 1204 (8th Cir. 1985), involved whether the presiding judge had to recuse himself under either 28 U.S.C. § 144 or § 455(a). In that case defendants were charged with the murder of a Deputy Marshal and the U.S. Marshal. Deputy Marshals as well as local law enforcement officers were witnesses in the case. The defendants claimed that the presiding judge had to be recused because he had a "professional or personal relationship" with the victims. Admittedly the defendants apparently did not base their motion on the ground that the court would have to make credibility determinations concerning the testifying Deputy Marshals. However, the ruling of the court applies to this case. The Eighth Circuit held that the affidavits filed in Faul which alleged that the judge "could not be impartial because of the deceased marshals' contact with the court . . . [did] not raise a reasonable question as to the judge's impartiality under section 455." Id. at 1210. The Court held that even if the "deceased marshals did have contact with the court by providing security, it [did] not follow that the judge had a 'professional or personal' relationship with either marshal sufficient to demonstrate personal prejudice, bias, or an inability to be impartial." Id. If the status of the victims in a murder case does not raise a "reasonable question as to the judge's impartiality" it is even less likely that the status of a witness would.

Although the statute requires recusal whenever "impartiality might reasonably be

questioned," [n]evertheless, judges are not to recuse themselves lightly under § 455(a)." United States v. Snyder, 235 F.3d 42, 45 (1st Cir. 2001). As the First Circuit stated in that case, "the unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice." Id. at 46.

> Every judge comes to the bench with a lifetime of background experiences, a roster of associations, and a myriad of views. This past history, in and of itself, is seldom sufficient to require recusal. Brody v. President & Fellows of Harvard College, 664 F.2d 10, 11 (1st Cir. 1981) (per curiam). Unless there is a direct link that establishes a reasonable basis for doubting impartiality, the judge should not step aside. In Re United States, 158 F.3d 26, 31 (1st Cir. 1998); cf. United States v. Giorgi, 840 F.2d 1022, 1035 (1st Cir. 1988) (explaining that unless a party can establish a reasonable factual basis to doubt a judge's impartiality "by some kind of probative evidence," then the "judge *must* hear a case as assigned") (internal quotation marks omitted).

Comfort v. Lynn School Committee, 2005 WL 1404464, 1st Cir. June 16, 2005 (publication page references are not available). "Proof that a [judge's] mind . . . was a complete tabula rasa . . . would be evidence of lack of qualification, not lack of bias. . . . If . . . bias and partiality be defined to mean the total absence of preconceptions in the mind of the judge, then no has ever had a fair trial and no one ever will." Snyder, 235 F.3d at 48.

Lastly, the Court must consider the affect that the granting of this motion would have on defendants in the future who, for whatever reason, wish to have their case heard by a judge or magistrate from another district. If this motion is granted, it will not be long before the word has spread throughout the Wyatt Center and the ACI that a defendant can get a judge or magistrate from outside of this district simply by putting his hands on a Deputy Marshal. Not only would this manifestly increase the burden this district places upon its sister districts but it would unnecessarily and unreasonably increase the risks taken by the Deputies whenever they must interact with a defendant.

CONCLUSION

For all of the foregoing reasons, the Motion to Recuse should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

STEPHANIE S. BROWNE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 9th day of September, 2005, I sent via facsimile and mailed a true copy of the Government's Response to Defendant's Motion to Recuse ordinary mail and postage prepaid, to:

George J. West
One Financial Plaza
Suite 1500
Providence, RI 02903