**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**

**vs.** **CR 96-00081L**

**RICHARD PAIVA, JR.**

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S ORAL MOTION, AT THE CLOSE OF THE GOVERNMENT'S CASE, TO DISMISS THE CLASS A VIOLATION ON THE BASIS THAT THE GOVERNMENT FAILED TO MEET ITS BURDEN OF PROOF.

TRAVEL OF THE CASE

In this matter the defendant moved at the close of the government's case that the Court dismiss the unnumbered violation entitled:

"While on supervision, the defendant shall not commit another federal, state or local crime." The nature of the noncompliance is stated as: "On August 16, 2005, Mr. Paiva committed the offense of Assault on a Federal Law Enforcement Officer."

This alleged violation was added to that brought by U.S. Probation on August 12, 2005.[1] In the accompanying report it is alleged, by inference, that the stated violation is a Grade A violation. "In this case, the defendant has committed a Grade A violation by committing a new felony offense that is a crime of violence." See page 5 of section entitled Classifications of Violations. Read together then the Defendant is alleged to have violated his supervised release by committing a felony offense, that is a crime of violence. The defendant submits that the government did not prove at the close of its case that the defendant committed a felony offense, that was a crime of violence in violation of his Supervised release.

ISSUE PRESENTED: Whether the government meet its burden to prove to the reasonable satisfaction of the Court that the Defendant committed a felony offense by virtue of the alleged assault on a Federal Law Enforcement Officer.

---

[1] U.S. Probation dropped one alleged violation stated on August 12, 2005 alleging that the defendant violated a Special Condition of his Supervised Release, to wit: that he have no contact with Jennifer Dore.

ARGUMENT

If the Court accepts the testimony put forward by the government at the violation hearing, draws all inferences in the governments favor and for this purpose disregards evidence to the contrary brought out on cross examination it is submitted that the most the court could conclude happened on August 16, 2005 in the basement of 15 Riviera Drive, Narraganset, R.I. was an incident of approximately 15 seconds in duration where in the defendant is described as having his hands around the waste of Deputy U.S. Marshall Charette pinning him briefly to a concrete foundation. An act that amounts to simple assault pursuant to 18 U.S.C.§ 111. The testimony presented by Deputy U.S. Marshall Wattick.

It is clear that in all proceedings brought against a defendant alleging that he committed a crime, as the violation he so alleges, he must be told what offense he is being accused of so that he can fairly assess his response to the charge and or defend against the charge. It has been held that under the Sixth Amendment to the United States Constitution defendant is entitled to an enumeration of each prima facie element of the charged offense, be fairly informed of the charges filed against him, and provide the defendant with a double jeopardy defense against future prosecutions. United States v. Gaytan 74 F.3d 545, 551 (5th Cir. 1996) Here U.S. Probation alleges the defendant committed a felony assault. The government has proceeded on that basis and has argued the same to this court. Here however the evidence does not support such a charge. Clearly here the government does not assert that the defendant injured a deputy U.S. Marshal. He clearly is not accused of having used a weapon of any sought. There is no testimony at all that he struck the Deputy Marshal. The government argued to the Court that the mere act of offensive touching of the Marshall made the case for felony assault. In the First Circuit the Government is wrong. At best here the incident rises to a simple assault. Chapter 7 of Title 18 uses the term simple assault in several of its sections including the one the government is proceeding on against Mr. Paiva. 18 U.S.C. § 111. It set up a punishment for simple assault of a fine or imprisonment of not more than one year. A misdemeanor offense or in violation of Supervised Release parlance a Grade C violation. U.S.S.G. § 7B1.1 (a)(3). Where the Congress has left a term in a criminal statute undefined as here with the words "simple assault" courts rightly may resort

to the common law for the definition of terms used in the statutes. Pettibone v. United States, 148 U.S. 197, 203 (1893).

In United States v. Bayes, 210 F.3d 64, 68-69 (1st Cir. 2000) the First Circuit Court of Appeals did just that in arriving at a definition of simple assault in a case involving a sister section under Chapter 7. The Court in Bayes noted that Bayes was convicted of violating 18 U.S.C. § 113(a)(5), which proscribes the crime of "simple assault" but does not define that term in any way. United States v. Bayes, 210 F.3d 64, 67 (1st Cir. 2000). Even courts that have reached definitions different from that which the First Circuit did in its 2000 Bayes decision acknowledge that §111 and 113 contain the same undefined reference to simple assault. In United States v. Chestaro, 197 F.3d 600, 605 (2d Cir. 1999) the second circuit reviewing an 18 U.S.C. §111 case noted "The term "simple assault" is not defined anywhere in the federal criminal code; however, it does appear in another provision of the code that has been the subject of considerable judicial interpretation. The statute proscribing assaults within the special maritime and territorial jurisdiction of the United States, 18 U.S.C. § 113, n2 includes a reduced penalty for simple assault in subsection (5), which has been held to "embrace the common law meaning of that term." United States v. Stewart, 568 F.2d 501, 504 (6th Cir. 1978); see United States v. Estrada-Fernandez, 150 F.3d 491, 494 n.1 (5th Cir. 1998); United States v. Juvenile Male, 930 F.2d 727, 728 (9th Cir. 1991); see also United States v. Shabani, 513 U.S. 10, 13, 130 L. Ed. 2d 225, 115 S. Ct. 382 (1994)

In Bayes the First Circuit took up the task of defining the term. "We turn to the common law for additional guidance. See United States v. Turley, 352 U.S. 407, 411, 1 L. Ed. 2d 430, 77 S. Ct. 397 (1957) ("HN7Where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."). Assault had two meanings at common law, "the first being an attempt to commit a battery and the second [being] an act putting another in reasonable apprehension of bodily harm." United States v. Bell, 505 F.2d 539, 540 (7th Cir. 1974); see also United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982). A battery, in turn, did not require proof that the defendant intended to injure another or to threaten her with harm. "The slightest willful offensive touching of another constitute[d] a

battery . . . regardless of whether the defendant harbor[ed] an intent to do physical harm." United States v. Williams, 197 F.3d 1091, 1096 (11th Cir. 1999); [**11] see also Burton v. Livingston, 791 F.2d 97, 99 (8th Cir. 1986) (noting that "a plaintiff may seek redress and win damages under state law for any unwanted touching under the common law of battery").

Thus, under the traditional view, "offensive touchings (as where a man puts his hands upon a girl's body or kisses a woman against her will . . .) would also suffice for battery" in the absence of a valid justification or excuse. 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 7.15(a), at 301-02 (1986). As Blackstone observed in his Commentaries:

> The least touching of another's person wilfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest manner.

3 Blackstone, Commentaries on the Laws of England 120 (Univ. of Chicago Press ed. 1979) (1768) (alterations from old English). [*69] Consistent with these principles, the common law provided that an assault committed by way of a battery did not require an intent to [**12] cause or to threaten an injury as long as the defendant touched another in a deliberately offensive manner without a valid reason to do so. See 2 LaFave & Scott, supra, § 7.16(a), at 37 n.13.1 (Supp. 1999). In Gates v. State, for example, a Georgia court affirmed a conviction for "assault and battery" based on evidence that the defendant "twice deliberately 'touched,' 'tapped' or 'hit' [someone] on the buttocks" without her consent. 110 Ga. App. 303, 138 S.E.2d 473, 474 (Ga. Ct. App. 1964). Similarly, in Wood v. Commonwealth, the Virginia Supreme Court affirmed a conviction for "assault and battery" based on evidence that the defendant groped a minor in a nonviolent but sexually offensive manner. 149 Va. 401, 140 S.E. 114, 115-16 (Va. 1927). Likewise, in Guarro v. United States, the D.C. Circuit observed that "unless there is consent, it would seem that a [nonconsensual] sexual touching is a sufficiently offensive act to constitute an assault" under District of Columbia law. 99 U.S. App. D.C. 97, 237 F.2d 578, 580-81 (D.C. Cir. 1956).

These cases do not control our decision, but they provide useful guidance as to what constitutes an assault at common law. Collectively, [**13] the decisions support the conclusion that, in a prosecution for simple assault under § 113(a)(5), it is sufficient to show that the defendant deliberately touched another in a patently offensive manner without justification or excuse. Cf. United States v. Frizzi, 491 F.2d 1231, 1232 (1st Cir. 1974) (concluding that spitting would support a conviction for assaulting or otherwise impeding a federal officer in violation of 18 U.S.C. § 111 because "although minor, it is . . . a bodily contact intentionally highly offensive"). We agree with the views of some of our sister circuits in this regard. See, e.g., Williams, 197 F.3d at 1096 (concluding that § 113(a)(5) does not require an intent to cause physical harm and therefore covers the act of touching a minor in a nonviolent but sexual manner); Martin, 536 F.2d at 536 (indicating that neither "assault by striking, beating[,] or wounding" nor "simple assault" requires an intent to do bodily harm); cf. United States v. Masel, 563 F.2d 322, 324 (7th Cir. 1977) (affirming a conviction for assaulting a member of Congress in violation of 18 U.S.C. § 351, [**14] based on evidence that the defendant "willfully caused, by spitting, an offensive touching").

United States v. Bayes, 210 F.3d 64, 68-69 (1st Cir. 2000)

Clearly then the law of the First Circuit which is binding precedent on this court fairly defines the term simple assault to include offensive touching or an assault committed by way of a battery. Here the physical touching described if the Court accepts the testimony without regard to the many countervailing facts brought out on cross examination would amount to no more than a simple assault. There can be no doubt based on the factual underpinnings of Bayes that physical touching falls squarely within the ambit of the definion. The Court in Bayes noted the actions there as: Bayes put his hand on [her] buttocks and rubbed [her] buttocks and grabbed at the bottom of [her] buttocks." Bayes claimed to have touched Smoak by accident, but Wade McCallon, a passenger seated nearby, later described what had occurred as "reaching behind the flight attendant and grabbing her in the rear end" and "squeezing."

Smoak immediately [**3] complained about Bayes's conduct to her on-board supervisor, Susan Corbett, and to the on-

board Customer Service Coordinator, Christopher Yates. Although there are conflicting accounts of exactly what happened next, there was evidence that Bayes persisted in being unruly despite periodic warnings from members of the crew. A scuffle ensued, ending only after the captain dumped thousands of gallons of fuel, diverted the aircraft in mid-flight, and made an unscheduled landing so that Bayes could be taken off the plane at Bangor International Airport in Maine. United States v. Bayes, 210 F.3d 64, 66 (1st Cir. 2000) Here it is respectfully submitted that the Government is asserting a definition supported in other Circuits but not so here. They must be squarely distinguished and rightly so as the common law definition accepted by the First Circuit in Bayes is firmly rooted in logic and ancient precedent.

Other courts have similarly held that offensive contact is an element of simple assault and does not preclude a jury instruction on that offense but rather requires such an instruction. In United States v. Estrada-Fernandez, 150 F.3d 491, 497 (5th Cir. 1998) the defendant Estrada presented evidence sufficient for the jury to find that he assaulted Gilbreath without a broom or mop handle and as any broom or mop handle that he did use may or may not have constituted a dangerous weapon under the circumstances, Estrada was entitled [**19] to an instruction on the offense of simple assault. The district court thus abused its discretion in denying Estrada's request for such an instruction. The court in Estrada allowed even if he did use the broom or mop handle the quality of that use could still allow the jury to find a simple assault

In United States v. Whitefeather, 275 F.3d 741, 743 (8th Cir. 2002) the court followed the First Circuit in Bayes The First Circuit considered the exact subsection at issue here in a buttocks grabbing case and held that simple assault under § 113(a)(5) requires only a showing "that the defendant deliberately touched another in a patently offensive manner without justification or excuse." United States v. Bayes, 210 F.3d 64, 69 (1st Cir. 2000). In another offensive touching case, the Eleventh [**5] Circuit concluded that the act of touching a minor in a nonviolent sexual manner amounted to simple assault under § 113(a)(5). United States v. Williams, 197 F.3d 1091, 1095-96 (11th Cir. 1999). We conclude that Whitefeather's conduct fit within simple assault under § 113(a)(5) and that the district court did not abuse its discretion by the

way in which it instructed the jury on the offense.

In United States v. Moore, 332 F. Supp. 919, 920-921 (D. Va. 1971) where the defendant was found guilty of simple assault by the Magistrate Judge, the District Court reversed. In Moore the court held that Moore at all times was willing to go to headquarters on his own. He had not committed a major crime and was not fleeing from justice. He was not on actual duty at the time. He was residing in his Government-assigned quarters where he had a right to be. On such a minor complaint of a simple assault [*921] upon a neighbor, if Naval Base police have the authority to break into a man's house, it raises serious constitutional questions. It could be argued that the same force could be used as to one crossing the grass where such action is prohibited. We need not, however, reach this point as we merely hold that this so-called "apprehension" was illegal as far as the defendant was concerned in that it was wholly excessive and unnecessary under all the facts and circumstances.

We think that the criminal responsibility of the wife, the defendant herein, must be gauged by her actions under civil law. To charge her with the knowledge of the Uniform Code of Military Justice and the fine distinctions between "apprehension" and "arrest," including whether she [**6] had the right to use reasonable force to resist, would not be compatible with the administration of justice. Since she did not strike Dolan, but confined her efforts to an attempt to pull his arm away from her husband, we must conclude that she used no more force than was reasonably necessary.

Here in the context of a wife pulling officers off her husband Courts have found that the wife had the right to resist during an illegal apprehension and determined that though actually touching occurred no simple assault was occasioned.

In United States v. Gonzalez, 122 F.3d 1383, 1387-1388 (11th Cir. 1997) the court held the defendant entitled to a lesser inclued jury instruction in a §111 case:
. Jury Instructions

Gonzalez next contends that he should receive a new trial because the jury instructions were deficient. He alleges three deficiencies in the jury instructions: (1) that

[**11] the district court failed to instruct on obstructing, resisting or opposing a federal officer in the service of process under 18 U.S.C. § 1501, n3 which Gonzalez argues is a lesser included offense of 18 U.S.C. § 111; n4 (2) that the district court failed to instruct the jury [*1388] that its verdict on the assault of federal marshals charge must be unanimous; and (3) that the district court failed to instruct on the defense's theory of self-defense.

n3 HN5Section 1501 provides, in pertinent part:
Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States commissioner; or
Whoever assaults, beats, or wounds any officer or other person duly authorized, knowing him to be such officer, or other person so duly authorized, in serving or executing any such writ, rule, order, process, warrant, or other legal or judicial writ or process--
Shall, except as otherwise provided by law, be fined under this title or imprisoned not more than one year, or both.
n4 HN6Section 111 states, in pertinent part:
(a) In general.--Whoever--
(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [including U.S. Marshals] while engaged in or on account of the performance of official duties ... shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

(b) Enhanced penalty.--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or

> inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

HN7The district court's refusal to deliver requested instructions constitutes reversible error only if (1) the requested instruction is correct, (2) it is not substantially [**13] covered by other instructions delivered, and (3) the proposed instruction is so vital that failure to give the requested instruction seriously impaired the defendant's ability to defend. United States v. Opdahl, 930 F.2d 1530, 1533 (11th Cir.1991).

The district court refused the defendant's request to charge on 18 U.S.C. § 1501 as a lesser included offense of section 111. The Supreme Court in Sansone v. United States, 380 U.S. 343, 348-50, 85 S. Ct. 1004, 1009, 13 L. Ed. 2d 882 (1965), developed a framework for analyzing whether a lesser included offense charge was required:HN8

In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it ... is entitled to an instruction which would permit a finding of guilt of a lesser offense. But a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and the greater offenses ... A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included [**14] offense.

Id. (internal quotation marks and citations omitted).

Here, the element of force was required for a conviction under section 111 but not for conviction under section 1501. This element (force) was disputed by Gonzalez. Under Sansone, then, the jury should have been instructed on section 1501 as a lesser included offense. Cf. United States v. Giampino, 680 F.2d 898, 901 (2d Cir.1982) ("There is no dispute that a § 1501 offense was "included' in the § 111 offense. Every element required to establish [the defendant's] obstruction of [the federal agent] in violation of § 1501 was also essential for establishment of

[the defendant's] guilt under § 111. Thus, if the prosecution proved a violation of § 111, it necessarily also proved a violation of § 1501."). We vacate Gonzalez's conviction under section 111 and remand it for a new trial.

Also, because Gonzalez's section 111 conviction served as the underlying "crime of violence" for Gonzalez's conviction for use or carrying a destructive device during and in relation to a crime of violence, Gonzalez's section 924(c) conviction must also be vacated and remanded for another trial.

Finally, because [**15] we reverse these convictions and remand for new trial due to the lack of a lesser included offense instruction, the district court's other alleged instructional deficiencies--even if meritorious--could not afford Gonzalez any greater relief. We need not, therefore, decide those issues. n5

United States v. Gonzalez, 122 F.3d 1383, 1387-1388 (11th Cir. 1997)

It is respectfully submitted that no felony assault has been proven and therefore the violation alleging the same ought to be dismissed.

George J. West. Esq. #3052
One Financial Plaza Suite 1500
Providence, RI 02903
Tel. 401-861-9042
Fax. 401-861-0330

Certificate

I hereby certify I faxed a copy to the United States Attorney's Office, AUSA Stephanie Brown this 30th day of November, 2005